# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ARTHUR E. PENNINGTON, II,            )
                                       )
                 Petitioner,            )
                                       )
v.                                   )            Case No. 11-CV-269-GKF-PJC
                                       )
TRACY MCCOLLUM, Warden,[1]            )
                                       )
                 Respondent.            )

## OPINION AND ORDER

Before the Court is the amended 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 19) filed by Petitioner, a state prisoner represented by counsel. Respondent filed a response (Dkt. # 22) and provided the state court records necessary for resolution of Petitioner's claims (Dkt. # 23). Petitioner filed a reply (Dkt. # 26). For the reasons discussed below, the amended petition for writ of habeas corpus is denied. The original petition shall be declared moot.

## *BACKGROUND*

On April 25, 2008, after receiving a tip from an informant, Broken Arrow Police Officers conducted surveillance on Petitioner's house in Broken Arrow, Oklahoma. Officers suspected Petitioner was trafficking in illegal drugs. Police observed Petitioner exit his house, get into his car, and drive away. Police stopped Petitioner's car after they observed him commit two traffic violations before leaving his neighborhood. Officers asked Petitioner to exit his car and, thereafter,

---

[1] Petitioner is currently in custody at the Oklahoma State Reformatory, in Granite, Oklahoma. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, Tracy McCollum, Warden, is the proper respondent. Therefore, Tracy McCollum, Warden, is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note the substitution on the record.

conducted a pat down to search for weapons. The officer conducting the pat down felt a hard rock-like substance in one of Petitioner's pockets. The officer thought the substance was cocaine base.

After determining Petitioner did not have weapons on his person, Officer Eric Nester retrieved his K-9 partner, Kilo, and conducted an exterior sniff search of Petitioner's vehicle. Kilo gave positive reactions at the driver's door. Once deployed to the interior of the vehicle, Kilo gave positive reactions at the driver's seat near the armrest and console. Nester did not locate drugs in the car. However, when he conducted a second pat down of Petitioner, Nester retrieved cocaine base and money from Petitioner's pockets and placed Petitioner under arrest. After Nester read Petitioner his rights, Petitioner told Nester that the substance was crack cocaine and the money was proceeds from crack sales. That same day, Police executed a search warrant at Petitioner's house and recovered more cocaine base and marijuana.

Based on these facts, Petitioner was charged in Tulsa County District Court, Case No. CF-2008-2043, with Trafficking in Illegal Drugs (Count 1), Possession of Controlled Drug - Second Offense (Count 2), Possession of Controlled Drug without Tax Stamp (Count 3), and Possession of Paraphernalia (Count 4). (Dkt. # 22-11 at 2-3). On February 9, 2009, Petitioner waived his right to a jury trial. Id. at 7. On April 6, 2009, Petitioner entered guilty pleas, id. at 8-9, and the trial court sentenced Petitioner as follows: Count 1 - life imprisonment, $25,000 fine, $250 victim compensation assessment, $150 OSBI lab fee, $100 drug fund, and a $50 D.A. drug fund; Count 2 - ten years imprisonment and $500 fine; Count 3 - five years imprisonment, $500 fine, and $250 victim compensation assessment; and Count 4 - one year in county jail, $250 fine, and $125 victim compensation fee. Id. at 9. The court suspended all monetary fines and ordered the sentences to run concurrent. Id. On April 15, 2009, Petitioner filed a motion to withdraw his guilty pleas and for

appointment of conflict counsel.  Id. at 14.  On April 27, 2009, the trial court appointed conflict counsel for Petitioner.  On May 18, 2009, the trial court held a hearing on Petitioner's motion to withdraw his guilty pleas and denied the motion.  Id. at 15.  The record reflects that four (4) different attorneys provided representation for Petitioner – Kyle Killam until November 2, 2008, Marcus Wright until March 2, 2009, Mark Cagle until April 24, 2009, and Steven Vincent until May 28, 2009.  Id. at 6-16.

On June 12, 2009, represented by attorney Andreas T. Pitsiri, Petitioner perfected a petition for certiorari to the Oklahoma Court of Criminal Appeals (OCCA).  (Dkt. # 22-4).  Petitioner raised two propositions of error, as follows:

> Proposition 1: Mr. Pennington did not knowingly and voluntarily enter his guilty pleas in the instant case.  Because Petitioner's pleas were entered as the result of coercion and confusion, the trial court abused its discretion by denying Mr. Pennington's motion to withdraw his pleas.
>
> Proposition 2: This Court should remand Mr. Pennington's case to the District Court of Tulsa County with instructions to correct the judgment and sentence by an order nunc pro tunc.

(Dkt. # 22-5).  In a Summary Opinion filed February 23, 2010, in Case No. C-2009-549, the OCCA denied certiorari, but remanded the case for nunc pro tunc correction of the Judgment and Sentence. (Dkt. # 22-6).

On April 15, 2010, Petitioner filed an application for post-conviction relief.  (Dkt. # 22-11 at 20).  On April 23, 2010, Petitioner filed a Second Motion to Withdraw Plea Out of Time Based on Newly Discovered Evidence.  Id.  Petitioner also filed several other motions, briefs, and supplemental briefs in support his motions.  Id. at 20-22.  In addition, he filed several documents entitled, "Memorandum Brief of Law Provided by Georgetown Law Professors Supporting Post-Conviction."  Id. at 21-22; Dkt. ## 22-8, 22-9, 22-10.  These state court filings are not models of

clarity. However, in the application for post-conviction relief, Petitioner raised twelve (12) propositions of error, including claims of ineffective assistance of trial and appellate counsel. On May 28, 2010, the trial court denied Petitioner's application for post-conviction relief. See Dkt. # 22-11 at 23; Dkt. # 22-12. Significantly, Petitioner did not perfect an appeal from the denial of his first application for post-conviction relief. (Dkt. # 22-11 at 24).

Petitioner continued to file numerous motions in the district court, including a second application for post-conviction relief, filed on July 8, 2010. Id. at 24-26. He raised the following propositions for relief:

Proposition 1: Mr. Pennington was deprived of effective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights to the United States Constitution.

Proposition 2: Petitioner's trial counsel was ineffective in failing to bring forth that evidence of Petitioner's claim(s) of coercion, which forced Petitioner to enter his plea(s) of guilty.

Proposition 3: Mr. Pennington's direct appeal Proposition I, which relates to his coerced pleas of guilty were inadequately raised and should excuse res judicata or procedural bar, and; Mr. Pennington's pleas were the result of coercion on the part of his trial counsel, the state prosecutor, and trial judge.

(Dkt. # 22-16). On August 20, 2010, the trial court denied Petitioner's second application for post-conviction relief. Id. at 26; Dkt. # 22-18.

On September 20, 2010, Petitioner appealed the district court's denial of his second application for post-conviction relief. (Dkt. # 22-19). On January 12, 2011, in Case No. PC-2010-892, the OCCA affirmed the denial of the subsequent application for post-conviction relief. (Dkt. # 22-20). The OCCA found that "Petitioner [] failed to establish entitlement to any relief [because he] has not raised any issue that either was not or could not have been asserted prior to the entry of his guilty plea, in his direct appeal proceedings, or in his previous post-conviction proceedings."

Id. at 2.  The OCCA stated that "Petitioner has not established any reason why he failed to appeal from the denial of his first application for post-conviction relief, or why his current grounds for relief were not asserted or were inadequately raised in that application."  Id. at 2-3.

On March 18, 2011, Petitioner filed a motion requesting permission to appeal the denial of his first application for post-conviction relief out of time.  (Dkt. # 22-21).  On April 20, 2011, the district court denied Petitioner's motion, (Dkt. # 22-22), and, on June 15, 2011, in Case No. PC-2011-0412, the OCCA dismissed Petitioner's appeal, stating it had already addressed this issue and it was "barred by the doctrine of res judicata," (Dkt. # 22-23).

On May 3, 2011, Petitioner, appearing pro se, filed his federal petition for writ of habeas corpus.  (Dkt. # 1).  On June 22, 2011, in response to Respondent's motion to dismiss for failure to exhaust state remedies, Petitioner filed a "motion for permission to amend claims exhausted for relief."  (Dkt. # 15).  In an Order dated November 7, 2011, the Court granted Petitioner's motion.  (Dkt. # 17).  On December 5, 2011, Petitioner, represented by counsel,  filed an amended petition.  (Dkt. # 19).  In the amended petition, Petitioner raises three (3) grounds for relief,

| | |
|---|---|
| Ground I: | The court violated the Petitioner's Sixth Amendment right to a trial by jury by forcing him to choose either to go to trial or to have a continuance to care for his wife contrary to the Sixth Amendment to the Constitution of the United States of America and Article 2 § 19 of the Oklahoma Constitution. |
| Ground II: | The defendant was coerced into pleading in violation of the Fifth and Sixth Amendments to the Constitution of the United States of America and denied effective assistance of counsel. |
| Ground III: | The Petitioner was denied effective assistance of counsel on appeal, contrary to the Sixth Amendment to the Constitution of the United States of America. |

Id. Respondent argues Grounds I, III, and the second part of Ground II are procedurally barred. (Dkt. # 22). Respondent also argues the OCCA's decision on the remainder of Ground II was not contrary to or an unreasonable application of federal law. Id.

### *ANALYSIS*

**A.  Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.  Claim adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013)).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Here, the OCCA adjudicated Petitioner's Ground II claim, that his pleas were coerced, on certiorari appeal. Therefore, the Court will review the claim that Petitioner's pleas were coerced, as raised in Ground II, under the standards of § 2254(d). As discussed in Part C, below, all remaining claims are procedurally barred.

**Voluntariness of guilty pleas (Ground II)**

In the first part of Ground II, Petitioner claims he was coerced into entering the guilty pleas. (Dkt. # 19 at 6). He claims "he was pressured by defense counsel and others to make the pleas [and] did not have time to make an intelligent decision." Id. Petitioner filed a motion to withdraw his

pleas and, after conducting a hearing on the motion, the trial court denied Petitioner's motion, finding the pleas were voluntary and intelligent. Petitioner filed a petition for certiorari. The OCCA denied the petition, concluding "the district court did not abuse its discretion in denying Petitioner's request to withdraw his pleas." (Dkt. # 22-6 at 2). Respondent argues this decision was not "contrary to nor an unreasonable application of federal law." (Dkt. # 22 at 6).

In Boykin v. Alabama, 395 U.S. 238 (1969), the Supreme Court held that a guilty plea must be entered into "knowingly and voluntarily." A plea is not voluntary unless the defendant knows the direct consequences of his decision, including the maximum penalty to which he will be exposed. Worthen v. Meachum, 842 F.2d 1179, 1182 (10th Cir. 1988) (stating that critical inquiry is whether defendant knows of maximum possible sentence), overruled on other grounds by Coleman v. Thompson, 501 U.S. 722 (1991). Furthermore, it is not necessary that the record reflect a detailed enumeration and waiver of rights as a result of the guilty plea; rather the issue is simply whether the record affirmatively shows that the guilty plea was intelligent and voluntary. Stinson v. Turner, 473 F.2d 913 (10th Cir. 1973). "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences from those findings." Fields v. Gibson, 277 F.3d 1203, 1212 (10th Cir. 2002) (citing Boykin). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Although a petitioner's statements made at the guilty plea hearing "are subject to challenge under appropriate circumstances," they constitute "a formidable barrier in any subsequent collateral proceeding." United States v. Maranzino, 860 F.2d 981, 985 (10th Cir. 1988) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); see also Romero v. Tansy, 46 F.3d 1024, 1033 (10th Cir. 1995).

The Tenth Circuit emphasizes the importance of plea colloquies: "This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings." <u>Fields</u>, 277 F.3d at 1214.

In this case, Petitioner's claim that he was coerced to plead guilty is belied by the record. First, Petitioner fails to show he signed the plea form under coercion or without an understanding of its contents. On the first page, Petitioner affirmed he could read and that he understood the plea form and the nature and consequences of the proceeding. (Dkt. # 22-2 at ¶¶ 5, 9). Petitioner also affirmed that he understood the crimes with which he was charged and the range of punishment for each of those crimes. <u>Id.</u> at ¶¶ 12, 16. On the second page, Petitioner placed his initials beside each part of question number 17, outlining the rights Petitioner had if he chose to go to trial. Petitioner then initialed and affirmed that he understood he was giving up these rights by entering a guilty plea, had discussed this with his lawyer, and was satisfied with his attorney's advice in the case. <u>Id.</u> at ¶¶ 18, 20, 21. Petitioner also affirmed that he wanted to change his plea of not guilty and give up the right to a jury trial. <u>Id.</u> at ¶ 22. Finally, on the third page of the plea form, Petitioner affirmed, by placing his initials next to the statement, that he entered the pleas of guilty by his "own free will and without any coercion or compulsion of any kind." <u>Id.</u> at ¶ 30.

In addition to the plea form, Petitioner testified at his plea hearing on April 6, 2009. (Dkt. # 23-5, Tr. Guilty Plea Hr'g). Petitioner affirmed that it was his signature and initials on the plea form. <u>Id.</u> at 4. Petitioner also affirmed that his attorney went through the plea form with him. <u>Id.</u>

Petitioner testified that he understood the charges against him and the range of punishment he faced.[2]

Id. at 5-6, 7-8. The trial court asked Petitioner if he understood that he was "giving up very valuable rights and these rights are set forth in paragraph 17," and went through the rights listed therein. Id. at 8. Petitioner stated that he understood. Id. at 9. Continuing, the court listed additional rights Petitioner was forfeiting by pleading guilty and Petitioner again testified that he understood. The court then asked Petitioner,

> THE COURT: Have you discussed this with your counsel?
>
> THE DEFENDANT: Yes, Your honor.
>
> THE COURT: Do you believe that this plea agreement is in your best interest?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Has anyone forced you or threatened you or coerced you in any way to enter this plea today?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Are you satisfied with the advice and counsel of Mr. Cagle in this matter?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Mr. Cagle, have you gone over this plea and this plea agreement with your client.
>
> MR. CAGLE: I have, Your Honor.
>
> THE COURT: Do you believe that he understands this plea agreement?
>
> MR. CAGLE: I do, Your Honor.

---

[2]Because the second page of the information included more than two drug-related felonies, Petitioner faced a mandatory sentence of life without the possibility of parole on Count 1, trafficking in a controlled substance. (Dkt. # 23-5, Tr. Guilty Plea Hr'g at 8).

THE COURT: Mr. Pennington, I forgot to ask, have you ever been treated for a mental illness?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you under the influence of any kind of alcohol, drugs or any substance which has impaired your thinking today?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Cagle, do you believe that your client understands this plea?

MR. CAGLE: I do, Your Honor.

THE COURT: And do you believe that it is his free and voluntary act?

MR. CAGLE: I do, Your Honor.

THE COURT: Do you believe that it is in his best interest?

MR. CAGLE: I do, Your Honor.

Id. at 11-12. For each of the four counts charged, the court asked Petitioner, "are you guilty or not guilty?" Id. at 14. Petitioner responded "guilty" to each charge. Id.

In his motion to withdraw the pleas, Petitioner claimed that he entered the pleas because he felt pressured by his attorney and the Assistant District Attorney. (Dkt. # 22-3 at 2-3). At the hearing on Petitioner's motion to withdraw his pleas, Petitioner testified that the plea agreement was mentioned to him at the hearing held on February 9, 2009. (Dkt. # 23-6, Tr. Mtn. to Withdraw Plea Hr'g at 11). Petitioner testified that he discharged his attorney on March 2, 2009, and received new counsel on March 23, 2009. Id. at 11. Petitioner stated that he did not have many conversations with either attorney regarding the plea agreement. Id. at 11, 13-14. Petitioner stated he "was under extreme pressure of being incarcerated and did not like all of the attorneys I had – they wasn't [sic]

representing me to the best of their ability." Id. at 15. He testified that his pleas were not free and

voluntary because:

> [E]very time I talked to an attorney about this situation it was always directing me
> towards, you know, you are going to get life without, you are going to get life
> without. You know, you need to take this deal, and, you know, you need to take this
> deal. You know, without anybody explaining to me, you know, any angles or
> anything that they could come up with me for a defense to affectively [sic] fight this
> case. . . . I feel like, you know, he was saying, take the deal, take the deal, and kind
> of like, you know, just kind of scared me into that deal.

Id. at 18-19. Petitioner also acknowledged the plea form was written legibly and he was able to

understand English. Id. at 21.

On cross-examination, Petitioner admitted he heard the evidence to be presented against him

at trial during the preliminary hearing and knew that two district court judges ruled in the State's

favor on Petitioner's motion to suppress the evidence seized during the search of Petitioner

conducted as part of the traffic stop. Id. at 25-27. Petitioner also admitted that he told his attorney,

Cagle, that he would take the plea offer if the State would put it back on the table and knew that "it

was a non-85 percent crime." Id. at 30-31. Yet, Petitioner also testified that he no longer agreed

with the statement of the factual basis[3] for his guilty pleas and did not understand all of the questions

on the plea form. Id. at 39-40. When asked why Petitioner accused the district attorney of coercing

him into the plea agreement, Petitioner replied,

---

[3]Question no. 28 in the plea form requires a statement of "factual basis for [the] plea." (Dkt.
#22-2 at 3). The statement read,

> On 4/25/08, in Tulsa County, I possessed trafficking amounts (5+ grams) of cocaine
> base after a prior Title 63 drug conviction. I possessed marijuana after a prior Title
> 63 conviction. I did not have a tax stamp on the cocaine base I possessed. I
> possessed drug paraphernalia.

Id. at 3, ¶ 28.

> Referring to you, Mr. Evans, you haven't even allowed me a chance to even do anything. You locked me in prison on fake charges.[4] You know, I ain't even have adequate time to get out and get the proper representation I need, even if I had to get ten attorneys. You know, I don't know what kind of game you are playing, but you know what, God is going to take care of all of that.

Id. at 44. Petitioner stated he was "totally stressed out" and was "in a daze" at the time he signed the plea form. Id. at 45-46. Petitioner also said he needed "mental psychiatric help right about now from this." Id. at 45.

Mark Cagle, Petitioner's counsel during the entry of the pleas, also testified at the hearing. Cagle testified that he did not believe he pressured or threatened Petitioner to accept the plea agreement. Id. at 54-55. Cagle stated Petitioner appeared to understand the form and was competent to accept the plea agreement. Id. at 56. Cagle also testified that he advised Petitioner "he did not stand a very good chance of prevailing if the matter was ultimately taken to a jury or nonjury trial." Id. at 58. After hearing summation arguments, the trial court stated that it remembered Petitioner's plea colloquy, the plea form, and the comprehensiveness of the court's questions during the colloquy. Id. at 64. The court found Petitioner to not be credible, overruled the motion to withdraw Petitioner's plea, and found the "plea of guilty was voluntarily and knowingly entered." Id. at 64-65. The OCCA found the district court did not abuse its discretion in denying Petitioner's request to withdraw his pleas. (Dkt. # 22-6).

As outlined above, Petitioner's claim that his pleas were involuntary is not supported by the record. Petitioner signed and, in several places, initialed the plea form. The trial court conducted

---

[4]Petitioner's bond was revoked on April 9, 2009, when a charge of domestic assault was filed against him. However, that charge was filed in error. It was Petitioner's former step-son who was charged with domestic assault. (Dkt. # 23-6 at 11-12). The case against Petitioner was dismissed. Id. at 12.

a thorough plea colloquy and Petitioner stated that he understood the nature of the charges against him and the penalty range for each of the charges against him. Petitioner acknowledged he was waiving his right to a trial, stated that the pleas were in his best interest, and stated he was entering the pleas of his own free will. The record reflects that Petitioner entered guilty pleas in three prior drug-related felony cases.[5] Although the seriousness of the Tulsa County charges and the severity of the range of penalties no doubt added stress to Petitioner's plea decision, Petitioner had a sufficient understanding of the nature of the charges against him, had experience with drug-related felonies, and understood the consequences of entering pleas of guilty. Thus, Petitioner's claim that he was stressed out and in a daze when he entered the pleas is insufficient to show his pleas were involuntary.

Notably, for purposes of habeas review, Petitioner fails to present clear and convincing evidence to rebut the presumption of correctness afforded the state court's finding of fact that Petitioner's pleas were entered voluntarily. See Dkt. # 22-2 at ¶ 36(C); Jarrell v. Jordan, 7 F. App'x 852, 853-54 (10th Cir. 2001) (unpublished)[6] (affording presumption of correctness to state court finding that guilty pleas were knowing and voluntary); 28 U.S.C. § 2254(e)(1). Additionally, Petitioner failed to show that the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner's claim that

---

[5]Petitioner entered guilty pleas to felony drug charges in three prior cases. The record provided by Respondent reflects that on July 15, 1994, Petitioner entered a guilty plea in Osage County District Court, Case No. CRF-1993-164. See Dkt. # 22-29. On November 14, 1997, Petitioner entered guilty pleas in Payne County District Court, Case Nos. CF-1997-221 and CF-1997-259. See Dkt. ## 22-30, 22-31.

[6]This unpublished opinion is not precedential but is cited for its persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

he accepted the plea agreement only because his attorneys failed to present him with a strategy for his defense at trial is unpersuasive. The Supreme Court states,

> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.
>
> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution or by contesting all guilt. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported.

Tollett v. Henderson, 411 U.S. 258, 267-68 (1973) (internal citations omitted). Thus, "[i]t is not an uncommon occurrence that a criminal defendant is pressured to some extent by co-defendants, friends, and relatives. These types of influences are inevitable and unavoidable." Williams v. Chrans, 945 F.2d 926, 933 (7th Cir. 1991) (citations omitted). "Advice – even strong urging' by counsel does not invalidate a guilty plea." Fields, 277 F.3d at 1214 (citations omitted).

After consideration of the entire record, the Court concludes that Petitioner fails to overcome the presumption of correctness afforded the state court's factual finding that Petitioner entered his pleas voluntarily. Additionally, Petitioner fails to show that the OCCA's decision was contrary to,

or an unreasonable application of, federal law as determined by the Supreme Court. Petitioner is

not entitled to habeas relief on his first claim in Ground II.

C.      **Procedural Bar (Grounds I, II.b., III)**

In Ground I, Petitioner claims the trial court deprived him of his right to a jury trial.[7] (Dkt.

# 19 at 5). In Ground III, Petitioner claims he was denied effective assistance of appellate counsel.

Id. at 7. Additionally, as part of Ground II, Petitioner raises a claim of ineffective assistance of trial

counsel for failing to "effectively argue[]" the issue of Petitioner's waiver of a jury trial. Id. at 6.

Petitioner first presented these claims to the OCCA on appeal from the denial of his second

application for post-conviction relief, (Dkt. ## 22-16, 22-17), and he acknowledges they are

procedurally barred under Oklahoma law. See Dkt. # 19 at 7. On appeal from the denial of

Petitioner's second application for post-conviction relief, the OCCA affirmed the district court's

ruling, stating "[a]ll issues which were previously raised and addressed are barred from further

consideration by res judicata, and all issues which could have been previously raised but were not

are waived." (Dkt. # 22-20 at 2 (citing OKLA. STAT. tit. 22, § 1086)).

The doctrine of procedural bar prohibits a federal court from considering a specific habeas

claim where the state's highest court declined to reach the merits of that claim on independent and

adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and

actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to

consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 724;

---

[7]In Ground I, Petitioner claims the trial court deprived him of his right to a jury trial in violation of the Oklahoma and United States Constitutions. To the extent Petitioner is seeking habeas relief under the Oklahoma Constitution, that request is denied. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)).

The OCCA's procedural bar, based on Petitioner's failure to raise his claims on certiorari appeal and to appeal the denial of his first application for post-conviction relief, is an "independent" state ground because state law provided "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. The procedural bar imposed on Petitioner's claims in Ground I and III is "adequate" to preclude habeas review because the OCCA routinely applies OKLA. STAT. tit. 22, § 1086, to bar claims that could have been but were not raised in a prior proceeding. Id. In addition, the procedural bar imposed on the ineffective assistance of counsel claim raised in Ground II is adequate to preclude federal habeas corpus review. Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998) (holding an ineffective assistance of counsel claim raised for the first time in a successive application for post-conviction relief was procedurally barred based on state law grounds independent and adequate to preclude federal habeas corpus review).

This Court may not consider Petitioner's procedurally barred claims unless he is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference

by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982).  The "fundamental miscarriage of justice" exception to a procedural bar applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Carrier, 477 U.S. at 495-96; Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); Schlup v. Delo, 513 U.S. 298 (1995). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 494 (1991).

        In his reply, Petitioner attributes his failure to raise the claims in Grounds I and II on certiorari appeal to the ineffectiveness of his appellate counsel.  (Dkt. # 26 at 3).  Petitioner raises ineffective assistance of appellate counsel in Ground III.  It is well established that in certain circumstances, appellate counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default.  See Carrier, 477 U.S. at 488-89. However, the ineffective assistance of appellate counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  Id. at 489; Edwards v. Carpenter, 529 U.S. 446, 453 (2000).

        In this case, Petitioner first presented his claim of ineffective assistance of appellate counsel to the OCCA as part of the appeal from the denial of his second application for post-conviction relief.  The OCCA imposed a procedural bar and denied relief on that basis.  Because Petitioner's claim of ineffective assistance of appellate counsel is itself procedurally barred, it cannot serve as "cause" unless Petitioner establishes cause and prejudice with respect to the procedural bar applicable to the claim of ineffective assistance of appellate counsel.  Carpenter, 529 U.S. at 453.

Petitioner offers no explanation for his failure to perfect an appeal from the denial of his first application for post-conviction relief and has not made the necessary showing. Therefore, Petitioner fails to establish "cause" to overcome the procedural bar applicable to Grounds I, II.b., and III.

Petitioner may also overcome the procedural bar by demonstrating a fundamental miscarriage of justice. However, the fundamental miscarriage of justice exception to the doctrine of procedural bar is applicable only when a petitioner asserts a claim of actual innocence. Herrera, 506 U.S. at 403-404; Sawyer, 505 U.S. at 339-41; see also Schlup, 513 U.S. 298. To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime.... [Or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted).

Petitioner does not claim he is innocent nor does he attempt to assert facts to support a claim of innocence. Rather, Petitioner states that a claim of innocence "would be difficult to show . . . since the Petitioner was unconstitutionally denied a right to a jury trial, where the facts may or may not have proved his innocence." (Dkt. # 26 at 3). That argument goes to legal innocence, as opposed to factual innocence. See Laurson v. Leyba, 507 F.3d 1230, 1233 (10th Cir. 2007) ("Actual

innocence means 'factual innocence.'"); see also Brecheen v. Reynolds, 41 F.3d 1343, 1357 (10th Cir. 1994). The fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if the merits of his claims are not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's claims in Grounds I, III, and the claim of ineffective assistance of trial counsel in Ground II. Coleman, 510 U.S. at 724. Habeas corpus relief is denied on those claims.

## D.     Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by

the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). As to the claim denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the dismissal of a claim on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his amended petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.  The Clerk shall note on the record the substitution of Tracy McCollum, Warden, in place of Anita Trammell, Warden, as party respondent.

2.  The amended petition for writ of habeas corpus (Dkt. # 19) is **denied**.

3.  The original petition for writ of habeas corpus (Dkt. # 1) is **declared moot**.

4.  A certificate of appealability is **denied**.

5.  A separate judgment shall be entered in this matter.

**DATED** this 15th day of August, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT